UNITED STATES DISTRICT COURT

Northern District of California

OPTIMUMPATH, LLC,

          Plaintiff,

   v.

BELKIN INTERNATIONAL, INC., *et al.*,

          Defendants.
_____/

No. C 09-1398 CW (MEJ)

**ORDER RE DISCOVERY DISPUTE (DKT. #194)**

## I. INTRODUCTION

Before the Court is the joint discovery dispute letter ("Joint Letter") filed by Plaintiff OptimumPath, LLC ("Plaintiff") and Defendants Belkin International, Inc., Cisco-Linksys, LLC, D-Link Systems, Inc., NETGEAR, Inc., and SMC Networks, Inc. (collectively "Defendants") on May 21, 2010. (Dkt. #194.) Upon careful review of the parties' positions, the Court ORDERS as follows.

## II. BACKGROUND

On January 30, 2008, Plaintiff filed the present case against Defendants, alleging infringement of U.S. Patent No. 7,035,281 (the "'281 Patent"). (Dkt. #1.) The '281 Patent, which names Anthony Spearman as an inventor, was filed in September 2000 and issued in June 2006. (Joint Letter at 1.) While the '281 Patent was still in prosecution, in August 2002, U.S. Patent Application No. 10/223,255 (the "'255 Application"), also naming Mr. Spearman as an inventor, was filed. *Id.* The '281 Patent and the '255 Application are both assigned to Plaintiff. *Id.* The '255 Application is still being prosecuted in the U.S. Patent and Trademark Office ("PTO"). *Id.*

On April 20, 2009, the PTO Examiner issued a final rejection of the '255 Application, based on a finding that all claims in the application were either anticipated or obvious in light of U.S. Patent No. 6,463,474 issued to Fuh, et al. (the "Fuh reference"), which Defendants disclosed in their invalidity contentions as prior art that anticipates or renders obvious the asserted claims of the '281 Patent. *Id.* In an attempt to establish an earlier priority date as to the Fuh reference in connection with the '255 Application, Plaintiff submitted a declaration by Mr. Spearman under 37 C.F.R. §

1.131[1]. *Id.* In his Declaration[2], Mr. Spearman states that he conceived the subject matter of the '255 Application no later than December 1998, discusses the conception and reduction to practice of the claims in the '255 Application, explains that the '255 Application claims a method implemented by the device claimed in the '281 Patent, and states that both the '255 Application and the '281 Patent were conceived from the same development activities in 1999. *Id.* Additionally, Mr. Spearman attached over 130 pages of supporting documentation to his Declaration. *Id.* Plaintiff previously produced the Spearman Declaration and appended documentation to Defendants. *Id.* at 3. This documentation included communications between Mr. Spearman and Tony Alexander, counsel for Plaintiff, and the instant dispute regards whether and to what extent Plaintiff may have waived the attorney-client and work product privileges. *Id.* at 2, 3.

### III. DISCUSSION

In the Joint Letter, Defendants argue that by submitting Mr. Spearman's § 1.131 Declaration to the PTO, Plaintiff waived the attorney-client and work-product privileges as to all documents and communications relating to all of the subject matter addressed in the declaration and appended documentation. *Id.* at 2. Defendants contend that Plaintiff waived privilege with respect to documents and communications that it deemed helpful in the PTO prosecution, but now refuses to produce related documents and communications that are less favorable, arguing that the information Plaintiff is withholding goes to the heart of its defenses. *Id.* at 1. Defendants request that the Court

---

[1] 37 C.F.R. § 1.131 provides that "[w]hen any claim of an application or a patent under reexamination is rejected, the inventor of the subject matter of the rejected claim . . . may submit an appropriate oath or declaration to establish invention of the subject matter of the rejected claim prior to the effective date of the reference or activity on which the rejection is based." Section 1.131 further provides that "[t]he showing of facts shall be such, in character and weight, as to establish reduction to practice prior to the effective date of the reference, or conception of the invention prior to the effective date of the reference coupled with due diligence from prior to said date to a subsequent reduction to practice or to the filing of the application. Original exhibits of drawings or records, or photocopies thereof, must accompany and form part of the affidavit or declaration or their absence must be satisfactorily explained."

[2] The Spearman Declaration has not been electronically filed. The references to his declaration are taken from the factual background section of the Joint Letter.

2

order Plaintiff to produce "all documents and communications relating to all of the subject matter that it knowingly waived for its benefit" in connection with the prosecution of the '255 Application. *Id.* at 2.

In response, Plaintiff states that it has produced all documents that are reasonably related to the "very limited waiver" that occurred. *Id.* at 4. Plaintiff argues that the '281 Patent and the '255 Application are not legally related, that the disclosures occurred during prosecution of the '255 Application, and that the circumstances of disclosure do not support the waiver alleged by Defendants. *Id.* Plaintiff contends that the waiver which occurred as a result of the Spearman Declaration extends only to issues raised in the declaration – the date of conception, reduction to practice, and diligence – and argues that documents related to these issues have already been produced. *Id.* at 5.

**A.   Legal Standard**

In patent litigation, Federal Circuit law applies when resolving discovery disputes. *Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Systems, Inc.*, 237 F.R.D. 618, 623 (N.D. Cal. 2006). Thus, when determining whether the attorney-client privilege has been waived, Federal Circuit law will apply. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000). "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006) (internal citations omitted). In contrast, the work-product doctrine protects "documents and tangible things, such as memorandums, letters, and e-mails[,]" containing the thought processes and recommendations of an attorney. *Id.* at 1301-02.

"The attorney-client privilege evaporates upon any voluntary disclosure of confidential information to a third party. . . ." *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990). Further, waiver of the attorney-client privilege will apply "to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). Fairness dictates that the waiver must extend beyond the document initially produced, "so that a party is

3

1 prevented from disclosing communications that support its position while simultaneously concealing
2 communications that do not." *Id.* However, the waiver does not extend to portions of the materials
3 disclosed to the PTO which were redacted, because privilege regarding those matters was never
4 waived. *Certain Personal Computers, Monitors and Components Thereof*, U.S.I.T.C. Inv. No. 337-
5 TA-519, 2005 WL 669803. Similarly, a waiver of the work-product privilege extends to factual, or
6 non-opinion, work-product concerning the same subject matter as that of the disclosed work-
7 product. *In re EchoStar Communications Corp.*, 448 F.3d at 1301.

**B.     Application to the Case at Bar**

The Court must first delineate the scope of Plaintiff's waiver as to both the subject-matter and the time period covered before determining whether further production is required. The Court will consider each issue in turn.

    1.     <u>Subject-Matter Scope</u>

First, the Court must determine the subject-matter scope of Plaintiff's waiver. Defendants argue in favor of a broad waiver of the attorney-client privilege, and seek production of all documents and communications related to the topics in the Spearman Declaration and attached documentation. The parties agree that the documents attached to the Spearman Declaration address the following topics: (1) inventorship; (2) public sales, showing, and releases; (3) conception, reduction to practice, and diligence in reduction to practice; (4) building, modeling, simulation, and testing of the alleged invention; (5) publication or plans to publish descriptions of the alleged invention; and (6) announcement, showing, or sale of the products embodying the alleged inventions.

In addition, Defendants contend that the following topics are also covered: (1) prior art references; (2) state of the prior art; (3) the goals and objectives of the alleged invention; (4) structure, function and methods of the alleged invention; and (5) alternate embodiments of the alleged invention. *Id.* at 2. Defendants state that the documentation also contains extensive communications between Mr. Spearman and Mr. Alexander regarding their awareness of any prior art references during prosecution of the '281 Patent, drafts of the '281 Patent, and Plaintiff's

4

1 patenting strategy as to the '255 Application. *Id.* at 3. Further, Defendants contend that the
2 Spearman Declaration and appended documentation discuss and relate to other prior art, including
3 U.S. Patent Nos. 6,615,263 and 7,035,230, both cited along with the Fuh reference in the Examiner's
4 rejection of the '255 Application, and U.S. Patent No. 6,058,431 and a Cisco Systems prior art
5 device. *Id.*

6 Regarding the discussions of prior art references, Defendants argue that several of the
7 communications attached to the Spearman Declaration relate directly to whether Plaintiff disclosed
8 all known prior art references to the PTO, which Plaintiff claims it did in its responses to
9 Defendants' interrogatories. *Id.* Defendants claim that, without access to additional documents and
10 communications related to the subject matter of those disclosed to the PTO, they would be unable to
11 challenge Mr. Spearman's assertion in his Declaration that he was unaware of any patents that
12 would compete with his invention. *Id.*

13 Defendants also dispute Plaintiff's argument that the '281 Patent and the '255 Application
14 are unrelated. Specifically, Defendants claim that claim 54 of the '255 Application recites most of
15 the language of claim 1 of the '281 Patent verbatim, and that a "substantial portion" of the Spearman
16 Declaration is identical to Plaintiff's responses to interrogatories in the instant case. *Id.* at 3.

17 In response, Plaintiff argues that the waiver of the attorney-client privilege that occurred
18 pursuant to disclosure of documents and communications to the PTO was very limited. *Id.* at 4.
19 Plaintiff contends that any disclosures made in relation to the '255 Application were made for the
20 sole purpose of establishing a date of conception, reduction to practice, and diligence, and that the
21 documents submitted with the Spearman Declaration relate specifically to this purpose. *Id.* Plaintiff
22 cites 37 C.F.R. § 1.131, which provides that the purpose of a § 1.131 declaration is "to establish
23 reduction to practice prior to the effective date of the reference, or conception of the invention prior
24 to the effective date of the reference coupled with due diligence from prior to said date to a
25 subsequent reduction to practice or to the filing of the application."

26 Additionally, Plaintiff contends that in virtually every patent prosecution, the patentee and
27 counsel discuss prior art, and that the law requires all prior art be disclosed to the PTO. *Id.* at 4.
28

5

Plaintiff argues that if the Court adopts Defendants' position, those disclosures would constitute a waiver of all discussions between the patentee and counsel in any subsequent litigation. *Id.* Plaintiff argues that because the disclosures made in relation to the '255 Application were not made to secure a legal right in relation to Plaintiff's '281 Patent, the patent-in-suit, it would be highly prejudicial to Plaintiff if the Court were to order further disclosures. *Id.* Plaintiff states that, to whatever extent the '255 Application and the '281 Patent overlap as to the technology involved and the conception and reduction to practice of that technology, Plaintiff has produced all documents relating to the waiver that occurred. *Id.*

Where a plaintiff seeks to use privileged material disclosed to the PTO to support its position in the current litigation, the defendant is entitled to discover all material related to the subject matter of the disclosed documents. *Board of Trustees of Leland Stanford Junior Univ.*, 237 F.R.D. at 625; *Certain Plastic Grocery and Retail Bags*, U.S.I.T.C. Inv. No. 377-TA-492, Order No. 11, 2003 WL 22811124. If the plaintiff seeks to have a declaration or the accompanying documentation already disclosed to the PTO become part of the record in the pending litigation, or seeks to rely upon them in any formal way, courts will find that the plaintiff used this privileged material in support of its position in the litigation. *Certain Plastic Grocery and Retail Bags*, 2003 WL 22811124. However, if the plaintiff does not seek to rely upon the privileged material to support its position, no discovery will be compelled. *Id.*

Upon careful review, the Court finds that Defendants have made no showing that Plaintiff has relied upon the disclosures made in connection with the '255 Application in its attempt to secure a legal right with respect to the patent-in-suit. Similarities between the language used in the Spearman Declaration and the interrogatories in this case are incidental because, as explained in the declaration, the '255 Application claims a method implemented by the device claimed in the '281 Patent, and both the '255 Application and the '281 Patent were conceived from the same development activities and by the same inventor in 1999. (Joint Letter at 1.) Thus, it is clear to the Court that claim 54 of the '255 Application and claim 1 of the '281 Patent are similar because each was conceived from the same development activities and by the same inventor at the same time.

6

Further, Defendants have failed to show how Plaintiff's use of similar language in both an interrogatory response and the Spearman Declaration establishes that Plaintiff is using privileged material disclosed in the declaration to claim a legal right in the '281 Patent.

Plaintiff states that it previously produced the Spearman Declaration and appended documentation to Defendants, and that to whatever extent that the '255 Application and the '281 Patent overlap as to the technology involved and the conception and reduction to practice of that technology, Plaintiff has produced all documents relating to the waiver that occurred. Because Plaintiff is not using the material disclosed in connection with the '255 Application to support its position in this litigation, the Court finds that no further production is necessary.

### 2. Temporal Scope

As to the temporal scope of production, Defendants argue in favor of a broad waiver and seek production of documents as to a wide variety of topics, without temporal limitation. However, Defendants do not specifically address Plaintiff's argument in favor of a limited temporal scope. Plaintiff argues that the scope of waiver must be limited to the time from which the issues of conception, reduction to practice, and diligence were first discussed with counsel until the time the PTO granted the application which issued as the '281 Patent. (Joint Letter at 5.) Plaintiff contends that this scope is appropriate because it marks the last time that the waived material was at issue with respect to the patent-in-suit. *Id.* Plaintiff argues that this temporal scope is also appropriate because it has not relied in any way on the disclosures made in association with the Spearman Declaration. *Id.*

Where a waiver of privilege is not renewed beyond the instance of waiver, the temporal scope of that waiver must be limited. *Board of Trustees of Leland Stanford Junior Univ.*, 237 F.R.D. at 627. In *Board of Trustees*, the plaintiff sued the defendants in 2005 for patent infringement regarding two patents for which the application process began in 1992. *Id.* at 620-21. In order to prove to the PTO that two co-inventors were erroneously excluded from the original application, the plaintiff submitted three declarations which included legal advice given by counsel to the inventors of the patent-in-suit. *Id.* at 621. The PTO accepted the plaintiff's petition for

7

corrected inventorship, and the plaintiff relied upon that corrected inventorship in the 2005 litigation to enforce the patents-in-suit. *Id.* at 626. Subsequently, the defendants sought production of documents regarding inventorship, and argued that there should be no temporal limitation as to production. *Id.* at 621. However, the court limited the temporal scope of the plaintiff's waiver of the attorney-client privilege, holding that the waiver of privilege began when the inventors of the patents-in-suit contacted the law firm which advised them on filing a petition for corrected inventorship and extended until the PTO granted that petition. *Id.* at 627-28.

Here, unlike in *Board of Trustees*, Plaintiff has not placed at issue any disclosures made in support of the '255 Application. Specifically, Plaintiff has not renewed its waiver of the attorney-client privilege which occurred as a result of the disclosures to the PTO. Thus, similar to the holding in *Board of Trustess*, the waiver must be limited to the period during which Plaintiff disclosed privileged communications to the PTO and relied upon them. Accordingly, the temporal scope of Plaintiff's waiver is limited to the time period during which the '281 Patent was in prosecution – beginning in September 2000 and ending in June 2006, when the Patent was issued.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Defendants are not entitled to further production. However, to ensure that Defendants are in possession of all documents falling within the subject matter and temporal scope of Plaintiff's waiver, the Court ORDERS Plaintiff to serve upon Defendants a declaration supporting its contentions that: (1) the disclosures made in relation to the '255 Application have not been used to secure a legal right in the '281 Patent; and (2) to whatever extent that the '255 Application and the '281 Patent overlap as to the technology involved and the conception and reduction to practice of that technology, Plaintiff has produced all documents relating to the waiver that occurred. The Court ORDERS Plaintiff to submit this declaration within seven days of this Order.

**IT IS SO ORDERED.**

Dated: June 8, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge