**United States District Court**
For the Northern District of California

1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   OPTIMUMPATH, LLC,                    No. C 09-01398 CW

10          Plaintiff,                   ORDER CONSTRUING
                                         CLAIMS AND
11      v.                               GRANTING
                                         DEFENDANTS' MOTION
12   BELKIN INTERNATIONAL, INC.;         FOR SUMMARY
     CISCO-LINKSYS, LLC; D-LINK          JUDGMENT
13   SYSTEMS, INC.; NETGEAR, INC.; AND   (Docket Nos. 234 &
     SMC NETWORKS, INC.,                 236)
14
            Defendants.
15   _____/

16

17      Plaintiff OptimumPath and Defendants Belkin International,

18   Inc.; Cisco-Linksys, LLC; D-Link Systems, Inc.; and NETGEAR, Inc.

19   dispute the meaning of claims in OptimumPath's U.S. patent No.

20   7,035,281 ('281 patent).[1]  In addition, Defendants move for

21   (1) summary judgment of non-infringement, (2) preclusion of

22   OptimumPath's claims based on the doctrine of equivalents, and

23   (3) summary judgment of invalidity.  The motions were heard on

24

25          [1]SMC Networks, Inc. was also a defendant in this action.
26   However, on April 11, 2011, the Court granted the parties'
     stipulation to the dismissal with prejudice of OptimumPath's
27   claims against SMC, and SMC's counterclaims for non-infringement,
     invalidity, and unenforceability.  Docket No. 269.
28

February 17, 2011.  Having considered all of the parties' submissions and oral argument, the Court construes the claims, and grants Defendants' motion for summary judgment.

DISCUSSION

The '281 patent is entitled "Wireless Provisioning Device." The patent application was filed on September 13, 2000 by two inventors, Anthony Spearman and Andrew Tompkins of Summerville, South Carolina.  Plaintiff asserts two independent claims, claims 1 and 13, and six dependent claims, claims 2, 6, and 9 through 12.

I. Claim Construction

A. Legal Standard

The construction of a patent is a matter of law for the Court.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Accordingly, in construing disputed terms, the Court first looks to the words of the claims.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Generally, the Court ascribes the words of a claim their ordinary and customary meaning.  Id.  The Federal Circuit instructs that "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art

**United States District Court**
For the Northern District of California

in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips, 415 F.3d at 1313.  Other claims of the patent in question can also assist in determining the meaning of a claim term.  Id. at 1314. "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."  Id.

The Federal Circuit also instructs that claims "must be read in view of the specification, of which they are a part."  Id. at 1315 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996)).  The specification must contain a description of the invention that is clear and complete enough to enable those of ordinary skill in the art to make and use it, and thus the specification is "always highly relevant" to the Court's claim construction analysis. Vitronics, 90 F.3d at 1582. "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term."  Id.  In some cases, the specification may reveal that the patentee has given a special definition to a claim term that differs from its ordinary meaning; in such cases, "the inventor's lexicography controls."  Phillips, 415 F.3d at 1316. The specification also may reveal the patentee's intentional disclaimer or disavowal of claim scope.  "In that instance, as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is

regarded as dispositive." Id. However, claims are not limited to the preferred embodiment described in the specification. See SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc, plurality opinion).

While emphasizing the importance of intrinsic evidence in claim construction, the Federal Circuit has authorized courts to rely on extrinsic evidence, which consists of "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at 1317 (quoting Markman, 52 F.3d at 980). While extrinsic evidence may be useful to the Court, it is less significant than intrinsic evidence in determining the legally operative meaning of claim language. Id.; see also C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004). Furthermore, extrinsic evidence is unlikely to lead to a reliable interpretation of claim language unless considered in the context of the intrinsic evidence. Phillips, 415 F.3d at 1319.

B. Analysis

The parties dispute the meaning of the following terms: "wireless card," "network card," "chassis," "channeling controller," "routes" and "authenticator."[2] Claims 1 and 2 recite the disputed language, but the terms and phrases appear throughout

---

[2] Defendants initially sought construction of the term "public domain networks," but the parties now agree that this term need not be construed.

United States District Court
For the Northern District of California

the patent.  The claims are as follows, with the disputed language

underlined:

Claim 1

A wireless provisioning device for use in public domain networks wherein the wireless provisioning device is accessible by a user of mobile computing devices, comprising:

a <u>chassis</u>;

at least one <u>network card</u>;

at least one <u>wireless card</u>;

at least one processor;

an operating system, the operating system operably configured in the chassis to control the at least one, network card, the at least one wireless card and the at least one processor, which are operatively coupled with the chassis;

a packet-switched interface capable of receiving a multiplicity of inbound framed packet-data to provide inbound packets and transmitting a multiplicity of outbound framed packet-data comprising outbound packets;

a <u>channeling controller</u>, coupled to the packet-switched interface that channels the inbound packets based on the inbound address information and constructs the outbound packets and channels the outbound packets with the outbound address information, the channeling controller capable of being effectively connected to at least one network via the operating system; and

an <u>authenticator</u> in operative communication with the operating system to allow authentication at the wireless provisioning device;

whereby the user of a mobile computing device connects to the wireless provisioning device without having to first access the Internet.

Claim 2

The wireless provisioning device of claim 1, wherein the

**United States District Court**
For the Northern District of California

channeling controller <u>routes</u> the outbound packets.
'281 patent at 12:63-13:28.

### 1. Wireless card

OptimumPath contends that the word "wireless card" need not be construed.  Defendants' proposed construction is

> a removable printed circuit board having an electrical connector that allows it to connect to a corresponding electrical connector in the chassis that is separate from the network card(s) and transmits and receives data using a wireless connection.

OptimumPath responds that a wireless card refers generally to any component, removable or integrated, with electronic circuitry providing a wireless interface.

The sparse language cited by OptimumPath, found in the summary of the invention, indicates that the wireless card was intended to mean a wireless interface.  However, a full reading of the specification demonstrates that the wireless card was meant to be a removable wireless interface, as opposed to a component integrated into the invention's internal circuitry.  The specification describes the wireless provisioning device as one capable of being "configured with differing numbers of wireless cards and network cards."  <u>Id.</u> at 10:11-15.  The user can "increase the number of potential customers to the connection point in the network by adding cards and antennas[.]"  <u>Id.</u> at 10:8-10.  At various points, the specification refers to the insertion and addition of cards.  <u>Id.</u> at 9:43-47; 9:63-65.  The capacity to add or remove cards gives the invention the

United States District Court
For the Northern District of California

flexibility that is one of its defining characteristics.  Id. at 9:63-10:2.  In order to insert or remove a wireless card, it must be a separate, stand-alone circuit board, not a chip soldered and integrated onto the main circuit board inside the chassis.  Figures 1 and 2 affirm this understanding because they depict multiple, external wireless cards.  Contrary to OptimumPath's argument, this interpretation does not rest solely on the preferred embodiments described in the specification.  See Fuji Photo Film Co., Ltd. v. International Trade Com'n., 386 F.3d 1095, 1106 (Fed. Cir. 2004).

In addition to the intrinsic evidence, industry dictionaries provide support for Defendants' interpretation of the term "wireless card."  The Microsoft Computer User's Dictionary (1998), the IEEE Authoritative Dictionary on IEEE Standards Terms (2000), the IBM Dictionary of Computing (1994), and Microsoft Press Computer (1994) all define a "card" as a printed or electrical "circuit board" or component that "plug[s] into" or "can be plugged into" a computer.  These definitions are uniform and consistent with the understanding of a wireless card as one that is separate and removable from the main circuit board, which is internal to the wireless provisioning device.  Boston Scientific Scimed, Inc. v. Cordis Corp., 554 F.3d 982, 987 (Fed. Cir. 2009) ("Courts may of course 'rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading

of the patent documents . . .'") (citing <u>Phillips</u>, 415 F.3d at

1322-23).

Finally, an OptimumPath pending application before the United

States Patent and Trademark Office (PTO), Application No.

11/157,592 ('592 application), contradicts its assertions in this

action that the '281 patent encompasses wireless interface chips

and chipsets.  The PTO Examiner rejected the '592 application

because it was anticipated by or obvious in light of another

OptimumPath application, No. 10,223,255 ('255 application).

OptimumPath does not dispute that its '255 application adopted the

entirety of its '281 patent, which was pending at that point.  In

response to the Examiner's rejection, OptimumPath sought to

distinguish the '592 application from the '255 application.  It

explained that the '592 application offered a configuration with a

microprocessor chipset that allowed for an indeterminate number of

connections, as an alternative to a configuration containing "up

to seven wireless connections and one wired connection, or one

wired connection and seven wireless connections, or any

combination as seen fit for the network."

Thus, by implication, the '281 patent, which also described

the wireless provisioning device as containing "up to seven

wireless connections and one wired connection, or seven wired

connections and one wireless connection, or any combination as

seen fit for the network," with no mention of chipsets or chips,

treated wireless cards as circuit boards, distinct from chips and

United States District Court
For the Northern District of California

chipsets, which are integrated into motherboards as opposed to insertable and removable.

Accordingly, the Court construes a wireless card as "a removable printed circuit board having an electrical connector that allows it to connect to a corresponding electrical connector in the chassis that is separate from the network card(s) and transmits and receives data using a wireless connection."

2. Network card

OptimumPath contends that the phrase "network card" need not be construed.  Defendants' proposed construction is "a removable printed circuit board having an electrical connector that allows it to connect to a corresponding electrical connector in the chassis that is separate from the wireless card(s) and transmits and receives data using a wired connection."

Defendants rely on much of the same patent language that refers to the wireless cards as being separate, but capable of insertion into the chassis.  They also point to Figure 1, which identifies a "10/100 NIC," a network card that is separate from four wireless cards, and capable of insertion into the chassis. The specification expressly identifies Figure 1 as "an exemplary embodiment of a wireless provisioning device in accordance with the present invention."  Id. at 12:7-9.

OptimumPath counters by pointing out that Figure 2 depicts a "2 slot wireless Router" but it does not show a network card separate from the motherboard.  OptimumPath notes that the

**United States District Court**
For the Northern District of California

specification refers to Figure 2 as an embodiment of the patent when it states, "The presently preferred embodiments of the invention will be best understood by reference to the drawings of FIGS. 1-3." Id. at 11:40-42. In addition, the specification describes Figure 2 as "a schematic diagram of a two slot wireless device embodiment in accordance with the present invention." Id. at 3:13-15. According to OptimumPath, because claim 1 requires at least one network card, and a network card is not depicted in Figure 2, the network card must be integrated into the motherboard, not a "separate, removable circuit board."

However, the specification further explains that Figure 2 depicts a 2.4 Ghz bridge, and states that "a typical configuration for a 2.4 Ghz bridge 200 is either 1 or 2 wireless cards with PCM/CIA connectors." Id. at 12:28-30. The specification explains that the "output for the wireless bridge 200 is either the 10/100 ethernet or the other wireless card 210." Id. at 12:31-32. Thus, Figure 2 provides a schematic drawing of a 2.4 Ghz bridge which may be configured in two ways--one that includes two wireless cards and no network card, and another that includes a wireless card and a network card. Accordingly, the configuration of the Figure 2 bridge with a network card may embody the claimed invention, even though the configuration of the Figure 2 bridge without a network card does not. The Federal Circuit has explained, "Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed."

TIP Systems, LLC v. Phillips & Brooks/Gladwin, Inc., 529 F.3d 1364, 1373 (Fed. Cir. 2008).  It is true that the Federal Circuit has also stated that generally claims are not interpreted to exclude embodiments disclosed in the specification.  Oatey Co. v. IPS Corp., 514 F.3d 1271, 1276 (Fed. Cir. 2008).  Nonetheless, while Figure 2's depiction of a wireless bridge with two wireless cards may not be an embodiment of the claimed invention, an alternate configuration of the figure, as described in the specification, is an embodiment.

Accordingly, the Court construes a network card as a removable printed circuit board having an electrical connector that allows it to connect to a corresponding electrical connector in the chassis that is separate from the wireless card(s) and transmits and receives data using a wired connection.

3. Chassis

OptimumPath contends that the word "chassis" need not be construed, while Defendants' proposed construction is "a casing having slots for removable network and wireless cards." OptimumPath's expert, Dr. Teresa Dahlberg, stated in her report that the chassis described in the '281 patent houses the components of the wireless provisioning device.  The '281 patent describes the chassis as containing slots capable of accommodating the addition of various cards and antennas.  "The user can also increase the number of potential customers to the connection point in the network by adding cards and antennas without the need for

chassis changes."  '281 patent at 10:8-11.  "By inserting the cards in the slots of a chassis that contains open-source code, preferably LINUX, as its operating system (OS), the wireless provisioning device can be configured as a router or a bridge." Id. at 9:43-47.  Because the device requires removable wireless and network cards, the chassis must contain slots for the insertion of both.  Accordingly, the Court construes the term chassis as "a casing having slots for removable network and wireless cards."

       4. Channeling controller

Defendants assert that it is unnecessary to construe the meaning of "channeling controller" because the plain claim language is sufficient to define the term.  The claim language states that the "channeling controller . . . channels the inbound packets based on the inbound address information and constructs the outbound packets and channels the outbound packets with the outbound address information."  Id. at 13:13-17.  The prosecution history for the '281 patent reveals that, after the Examiner rejected claim 1 on the grounds that the description of "channeling controller" was insufficiently definite, OptimumPath responded that "it may readily be ascertained from the claim itself that the channel controller directs and assembles the inbound and outbound data packets based on their address, which gives a definite scope to claim 1."  Declaration of Todd Briggs (Briggs Decl.), Ex. DD, DEF005394.

United States District Court
For the Northern District of California

In its opening brief, OptimumPath sought a construction of a "channeling controller" as "a component that routes or bridges packets in a network."  In its reply brief, OptimumPath appears to narrow its proposed construction, asserting that the channeling controller is a component of the wireless provisioning device that performs the dynamic routing function.

"Without a customary meaning of a term within the art, the specification usually supplies the best context for deciphering claim meaning."  Honeywell Intern. Inc. v. Universal Avionics Systems Corp., 488 F.3d 982, 991 (Fed. Cir. 2007).  Therefore, the Court rejects OptimumPath's new proposed construction that the "channeling controller" is a component of the wireless provisioning device that necessarily performs the dynamic routing function.  Instead, the Court construes the term channeling controller in accordance with the claim language as a component that channels inbound packets based on inbound address information and constructs outbound packets and channels outbound packets with the outbound address information.

    5. Routes

Defendants assert that "routes" includes dynamic or static routing, whereas OptimumPath contends that it requires dynamic routing.  Because the term dynamic routing is not expressly used in the '281 patent, the issue is whether the specification, claims or other evidence supports a construction that requires dynamic routing.  According to Dr. Dahlberg, the specification clearly

13

**United States District Court**
For the Northern District of California

contemplates dynamic routing because it refers to the Routing
Information Protocol (RIP), '281 patent at 7:41-50, which is a
form of dynamic routing.  Furthermore, the specification describes
routers as making

> use of the destination network identifier in a message
> to determine an optimum path from the source network
> to the destination network.  Various routing
> algorithms may be used by routers to determine the
> optimum paths.

Id. at 8:14-18.  This description of the routing function reflects
dynamic or adaptive routing, rather than static routing, which
does not seek out the optimum path for the transmission of data
packets.  Declaration of Corby R. Vowell in Support of Opening
Claim Construction Brief, Ex. 5, IEEE 100--The Authoritative
Dictionary of IEEE Standard Terms 16 (7th Ed. 2000).  Therefore,
the Court finds that "routes" requires dynamic routing.

      6. Authenticator

OptimumPath proposes that the term "authenticator" be
construed as,

> a mechanism for authenticating the identity of a
> device or user in a manner that does not require the
> wireless provisioning device to be rebooted each time
> a new user or device is added to the network.

Defendants, on the other hand, seek to define the term more
broadly, simply as "a mechanism for authenticating the identity of
a device or user."[3]

---

[3] The construction Defendants propose in their brief is not
the same as the construction they previously set forth in the
Joint Claim Construction Statement.

United States District Court
For the Northern District of California

1   The plain language of asserted claims 1, 2, 6, and 9 through

2   13 does not make express reference to an authenticator capable of

3   adding new users without rebooting.  Defendants correctly argue

4   that, because the rebooting requirement is omitted in the asserted

5   claims but included in other, unasserted claims, it is

6   impermissible to import such a limitation into the asserted

7   claims.  Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d

8   1313, 1326 (Fed. Cir. 2003) ("Our court has made clear that when a

9   patent claim does not contain a certain limitation and another

10   claim does, that limitation cannot be read into the former claim

11   in determining either validity or infringement").  Furthermore,

12   because the '281 patent specification provides an explicit

13   definition for "authentication," which does not include a no-

14   rebooting requirement, it is improper to import such a limitation

15   into the definition of authentication.  Linear Tech. Corp. v.

16

17   Int'l Trade Comm'n, 566 F.3d 1049, 1054 (Fed. Cir. 2009)

18   (affirming a claim construction because it was consistent with the

19

20   specification's explicit definition).

21   Thus, while the patent addresses a problem with the prior

22   art, which required rebooting each time a change was made to the

23   list of authorized users or devices, and the specification states

24   that the invention does not require rebooting, this aspect of the

25   patent describes a characteristic of the invention, rather than a

26

27   requirement of the authenticator.  Therefore, the Court construes

28

an authenticator as simply a mechanism for authenticating the identity of a device or user.

II. Motion for Summary Judgment

    A. Legal Standard

    Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56. Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir. 1987). The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

    Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    B. Non-Infringement

    The Court now considers whether there is evidence that the accused devices infringe the '281 patent given the Court's constructions. "Infringement is assessed by comparing the accused device to the claims; the accused device infringes if it

United States District Court
For the Northern District of California

incorporates every limitation of a claim, either literally or under the doctrine of equivalents." MicroStrategy Inc. v. Business Objects, S.A., 429 F.3d 1344, 1352 (Fed. Cir. 2005) (alterations omitted). "If, however, even one claim is missing or not met, there is no literal infringement." Id.

### 1. Literal Infringement

As explained above, the Court has construed the wireless and network cards to be separate, removal circuit boards providing wireless and network interfaces, and has further defined the chassis as a casing having slots for removable network and wireless cards. OptimumPath's expert, Dr. Dahlberg, has conceded that, under those constructions, none of the accused products literally infringes the '281 patent. Briggs Decl., Ex. I, Dahlberg Dep. at 85:24-87:7; 88:11-24 and 90:19-91:7. Therefore, the Court summarily adjudicates that the accused devices do not literally infringe the '281 patent.

### 2. Doctrine of Equivalents

Defendants contend that OptimumPath failed to comply with the requirements of Patent Local Rule 3-1(e), and thus should be precluded from asserting an infringement claim based on the doctrine of equivalents. Patent Local Rule 3-1 requires a plaintiff to serve on all parties a "Disclosure of Asserted Claims and Infringement Contentions." Separately for each opposing party, the disclosure must include, among other information, "[w]hether each limitation of each asserted claim is alleged to be

17

United States District Court
For the Northern District of California

literally present or present under the doctrine of equivalents in the Accused Instrumentality." Patent L.R. 3-1(e). Under the heading "Patent L.R. 3-1(e)," OptimumPath referred to an attached Exhibit A, a claims chart that provided no indication as to whether it asserted literal or doctrine of equivalents infringement with respect to each limitation of each of its asserted claims. Thus, OptimumPath did not expressly invoke the doctrine of equivalents, as required by Patent Local Rule 3-1. Nevertheless, OptimumPath asserts that Defendants were sufficiently notified of its equivalency claims through its disclosure under the heading Patent Local Rule 3-1(c). There, OptimumPath stated that its

> disclosures pursuant to Patent L.R. 3-1(c) are set forth in the chart as Exhibit A. For purposes of infringement of the '281 Patent and the disclosure requirements of L.R. 3-1(c), OptimumPath asserts that the Accused Instrumentalities all function in the same or substantially similar manner and include the same or substantially similar components.

OptimumPath contends that this catch-all statement preserved its claims based on the doctrine of equivalents.

Courts in this district, however, have strictly applied Patent Local Rule 3-1(e). Rambus Inc. v. Hynix Semiconductor Inc., 2008 WL 5411564, *3 (N.D. Cal.) (holding that plaintiff's failure to comply with Patent Local Rule 3-1(d), the predecessor rule to Rule 3-1(e), "provides ample, alternative justification for dismissing Rambus's claims of infringement under the doctrine of equivalents"); MEMC Electronic Materials v. Mitsubishi

18

**United States District Court**
For the Northern District of California

Materials Silicon Corp., 2004 WL 5363616, *4-6 (N.D. Cal.)
(precluding reliance on the doctrine of equivalents and barring
related expert testimony because plaintiff failed to disclose such
claims as required by Patent Local Rule 3-1(d)).  "The patent
local rules were adopted by this district in order to give
infringement contentions and claim charts more 'bite.'"  MEMC
Electronic, 2004 WL 5363616 at *4.

Thus, judges of this court have rejected plaintiffs' attempts
to assert claims under the doctrine of equivalents with blanket
statements.  Rambus, 2008 WL 5411564 at *3 ("The Patent Local
Rules require a limitation-by-limitation analysis, not a
boilerplate reservation."); MEMC Electronic, 2004 WL 5363616 at *5
("This blanket statement does not identify where each element of
each asserted claim is found within each wafer and does not point
out each element of each asserted claim that MEMC claims is
present under the doctrine of equivalents.").  Here, OptimumPath
also relies on a blanket statement, asserting substantial
similarities as to the instrumentalities, but failing to link
those similarities to particular claims or limitations within the
'281 patent.  This language falls short of the requirements of
Patent Local Rule 3-1(e).  Accordingly, OptimumPath's reliance on
the doctrine of equivalents is barred.  Genentech, Inc. v. Amgen,
Inc., 289 F.3d 761, 773-74 (2002).

Even if the Court were to consider OptimumPath's arguments
under the doctrine of equivalents, OptimumPath fails to produce

sufficient evidence of infringement.  The parties agree on two

tests to determine equivalence--the "insubstantial difference

test," and the "function-way-result" test.  "An element in the

accused product is equivalent to a claim limitation if the

differences between the two are 'insubstantial' to one of ordinary

skill in the art."  Seafoss v. Pioneer Consol. Corp., 374 F.3d

1142, 1150 (Fed. Cir. 2004).  "Under the function-way-result test,

one considers whether the element of the accused device at issue

performs substantially the same function, in substantially the

same way, to achieve substantially the same result, as the

limitation at issue in the claim."  The Federal Circuit has stated

that it applies the insubstantial differences test, and "[i]n

appropriate cases" the function-way-result test "offers additional

guidance on the question of equivalence."  Dawn Equipment Co. v.

Kentucky Farms, Inc., 140 F.3d 1009, 1015-16 (Fed. Cir. 1998).

The Supreme Court has not ruled on which test provides the better

approach.  Instead the Court has explained,

> In our view, the particular linguistic framework used
> is less important than whether the test is probative
> of the essential inquiry: Does the accused product or
> process contain elements identical or equivalent to
> each claimed element of the patented invention?

Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S.

17, 40 (1997).

Dr. Dahlberg states in her report that an integrated wireless

card is equivalent to a separate, removable wireless card because

it performs the same function, in substantially the same way, and

20

United States District Court
For the Northern District of California

achieves the same result, by essentially allowing network-capable devices to access the network through a wireless connection. Briggs Decl., Ex. I, Dahlberg Dep. at 93:18-97:17.  Dr. Dahlberg's report, however, does not establish equivalency in another important regard.  It is undisputed that integrated wireless chipsets cannot be removed from an internal motherboard without causing damage, and thus the removable wireless cards offer the distinct advantage of permitting upgrades, repairs and modifications, rendering the wireless provisioning device more adaptable.  Declaration of Dr. Nicholas Bambos, (Bambos Decl.) ¶ 90.  The ability to add or remove cards provides flexibility that is one of the defining characteristics of the wireless provisioning device.  '281 patent at 9:63-10:2.  Because OptimumPath has not produced evidence to establish the equivalence of this element of the accused devices, the Court summarily adjudicates that the devices do not infringe the '281 patent under the doctrine of equivalents.

III. Invalidity

Defendants assert that three prior art devices invalidate the '281 patent by anticipation or obviousness.

Title 35 U.S.C. § 102 establishes the various grounds for invalidation of patents based on anticipation by prior art.  The defense of anticipation requires "the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim.'"  Therasense, Inc. v. Becton, Dickinson and Co.,

593 F.3d 1325, 1333 (Fed. Cir. 2010) (quoting <u>Transclean Corp. v. Bridgewood Servs., Inc.</u>, 290 F.3d 1364, 1373 (Fed. Cir. 2002)).

Section 102(a) provides that a claimed invention cannot be validly patented if it was known, in use, patented, or described in a printed publication anywhere in the world, before the patentee's date of invention.  35 U.S.C. § 102(a).

To invalidate a patent under section 102(b), an invention must have been "patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for the patent in the United States."  35 U.S.C. § 102(b).

Section 102(g) "provides that an applicant is not entitled to a patent if 'before such person's invention thereof, the invention was made in this country by another, who had not abandoned, suppressed, or concealed it."  <u>Apotex Corp. v. Merck & Co., Inc.</u>, 507 F.3d 1357, 1359 (Fed. Cir. 2007) (quoting 35 U.S.C. § 102(g)).

If the requirements for an anticipation defense are not satisfied, obviousness provides another theory for invalidating a patent.  Title 35 U.S.C. § 103(a) provides,

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

**United States District Court**
For the Northern District of California

To avoid being obvious, a patent must be "more than the predictable use of prior art elements according to their established functions." KSR In't Co. v. Teleflex Inc., 550 U.S. 398, 417 (2007). To determine obviousness, "the invention must be considered as a whole and the claims must be considered in their entirety." Kahn v. General Motors Corp., 135 F.3d 1472, 1479 (Fed. Cir. 1998).

   A. ISP Base Station

   Defendants assert that certain ISP Base Station prior art, that corresponding to 1998 and 1999 invoices, contained every limitation of claims 1, 2 and 9 through 12, except for a removable network card and chassis, if those terms are construed as Defendants propose. However, Defendants contend that the removable network card and slotted chassis would have been obvious to one of ordinary skill in the art because other versions of the ISP Base Stations included removable network cards. Defendants further argue that the other two asserted claims--6 and 13--are obvious because it would have been obvious to combine the ISP Base Station with a Linux operating system.

   OptimumPath's sole argument that the ISP Base Station does not invalidate the asserted claims of the '281 patent is that the device performed only a bridging function, not a routing function, and therefore did not include the patent's claimed channeling controller. This argument fails in light of the Court's construction of the channeling controller, as a component which

United States District Court
For the Northern District of California

"channels the inbound packets based on the inbound address information and constructs the outbound packets and channels the outbound packets with the outbound address information."  In addition, Defendants present evidence the ISP Base Station did perform the routing function, and OptimumPath presents no evidence to the contrary.  Doug Karl's testimony and corroborating evidence supports that the ISP Base Station used RIP.  OptimumPath does not dispute, and its own expert agrees, that RIP is a dynamic routing protocol.  Dahlberg Report, ¶ 21.  Therefore, the Court grants Defendants' motion for summary adjudication that the ISP Base Station invalidates the asserted claims of the '281 patent.

B. Apple AirPort

Defendants next argue that the Apple AirPort prior art invalidates all of the asserted claims of the '281 patent due to anticipation under sections 102(b) and (g), and obviousness under section 103(a).

With respect to timing, OptimumPath disputes only that the Apple AirPort was prior art within the meaning of section 102(b). The relevant portion of section 102(b) states that a patent is invalid if the claimed invention was on sale more than one year prior to the date the patent application was filed.  35 U.S.C. § 102(b).  OptimumPath points out the absence of evidence as to when the Apple AirPort was first sold or shipped.  However, a claimed invention is considered "on sale" within the meaning of section 102(b) when it is offered for sale.  Scaltech, Inc. v.

24

Retec/Tetra, LLC, 269 F.3d 1321, 1325 (Fed. Cir. 2001).  The
sealed evidence upon which Defendants rely shows that the AirPort
was on sale within the meaning of § 102(b) more than one year
before the application for the '281 patent was filed.

Defendants argue that the '281 patent is obvious in light of
the Apple Airport.  First, Defendants argue that the Apple AirPort
contains every limitation of claims 1 and 9 through 12, except for
a removable network card and chassis as Defendants construe those
terms.  Defendants contend that it would have been obvious to one
of ordinary skill in the art to use a removable network card in
the Apple AirPort because removable network cards at the time were
widely available and were included in some versions of Karl's ISP
Base Station.

Similarly, Defendants assert that claims 6 and 13 were
rendered obvious by the AirPort because the Linux operating system
was freely available as a fully functional "off-the-shelf"
operating system and a person of ordinary skill would have
recognized that combining it with the Linux operating system would
improve the device.

Finally, Defendants argue that the Apple AirPort renders
obvious claim 2 of the '281 patent, which claims "[t]he wireless
provisioning device of claim 1, wherein the channeling controller
routes the outbound packets."  '281 patent at 13:27-28.  Karl
testified to having sold hundreds of upgrades for the Apple
AirPort before September, 1999, which added the routing function

1   to the device.  The sealed testimony on which OptimumPath relies

2   does not create a material dispute as to the availability of these

3   upgrades for the Apple AirPort at that time.

4        OptimumPath's argument that the Apple AirPort does not render

5   obvious the asserted claims of the '281 patent relies on two

6   purported distinctions between the patent and the Apple AirPort.

7   First, OptimumPath argues that the AirPort did not perform a

8   routing function, and therefore lacked a channeling controller.

9   This argument, however, is unavailing because the Court's

10  construction of channeling controller does not require that it

11  must perform a routing function.  Thus, even if the Apple AirPort

12  did not perform a routing function, that is not sufficient to show

13  that it did not include the channeling controller element of

14  claims 1 and 13 of the '281 patent.  Furthermore, if the

15  channeling controller were construed to require that it perform a

16  routing function, as explained earlier, adding such a function

17  would have been obvious.  Therefore, OptimumPath's argument as to

18  the channeling controller fails to establish that the asserted

19  claims of the '281 patent were not obvious in the light of the

20  Apple AirPort.

21       Second, OptimumPath argues that the AirPort did not render

22  obvious the asserted claims of the patent because the

23  authenticator, under its proposed construction, includes a no-

24  rebooting requirement.  However, Court has construed the

25  authenticator without the no-rebooting requirement.  Therefore,

26

even if the AirPort required rebooting, this does not show that it did not contain the authenticator element of the '281 patent.  In addition, Defendants have produced evidence that the Apple AirPort did not require rebooting, and OptimumPath has failed to submit any contrary evidence that would demonstrate a dispute of fact as to this issue.  Therefore, the Court finds that the AirPort invalidates the asserted claims of the '281 patent due to obviousness.

C. Täht/Retkowski System

Finally, Defendants argue that the asserted claims of the '281 patent are invalid as anticipated by the Täht/Retkowski System.  The Court need not resolve this issue because the Court has found that the ISP Base Station and Apple AirPort invalidate the asserted claims of the '281 patent.

CONCLUSION

The Court construes the following terms in the '281 patent. A "wireless card" is a removable printed circuit board having an electrical connector that allows it to connect to a corresponding electrical connector in the chassis that is separate from the network card(s) and transmits and receives data using a wireless connection.  The Court construes a "network card" as a removable printed circuit board having an electrical connector that allows it to connect to a corresponding electrical connector in the chassis that is separate from the wireless card(s) and transmits and receives data using a wired connection.  The Court construes

United States District Court
For the Northern District of California

the term "chassis" as a casing having slots for removable network and wireless cards.  A "channeling controller" is a component that channels inbound packets based on inbound address information and constructs outbound packets and channels the outbound packets with outbound address information.  "Routes" requires dynamic routing.  An "authenticator" is a mechanism for authenticating the identity of a device or user.

The Court GRANTS Defendants' motion for summary judgment on OptimumPath's claim for literal infringement, and Defendants' motion to preclude OptimumPath's claims based on the doctrine of equivalents.  The Court also finds that the accused devices do not infringe under the doctrine of equivalents.  The Court GRANTS Defendants' motion for summary judgment that asserted claims 1, 2, 6, and 9 through 13 of the '281 patent are invalidated by the ISP Base Station prior art and the Apple AirPort prior art.  The pretrial conference and trial dates are vacated.  The clerk shall enter judgment in Defendants' favor, and Defendants shall recover costs from Plaintiffs.

IT IS SO ORDERED.

Dated: 4/12/2011

_____
CLAUDIA WILKEN
United States District Judge

28